Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Proposed Attorneys for
Rudra Investments, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>RUDRA INVESTMENTS, LLC<br><br>    Debtor in Possession. | CASE NO.: 22-30275<br><br>Chapter 11<br><br>**DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL; GRANTING OF REPLACEMENT LIEN TO POPPY BANK; AND SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Preliminary Hearing:<br>Date: TBD<br>Time: TBD<br>Via Video/Teleconference<br><br>Final Hearing:<br>To Be Set |

**TO THE HONORABLE JUDGE MONTALI, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS, THE DEBTOR'S SECURED LENDERS AND OTHER PARTIES IN INTEREST:**

  Rudra Investments, LLC, the Debtor and Debtor in Possession ("Debtor"), hereby moves the Court for an Order Authorizing Interim Use of Cash Collateral and Scheduling a Final Hearing Pursuant to Federal Rule of Bankruptcy Procedure 4001 as follows:

**REQUEST FOR RELIEF**

1.  By this Motion, the Debtor requests the Court:

    a. Authorize the emergency use of cash collateral of CPIF California LLC, ("CPIF") Access Point Financial ("Access Financial"), Ascentium Capital, and the United States Small Business Administration (the "SBA" and along with CPIF, Access Financial, Ascentium Capital, the "Secured Creditors"), on an interim basis for necessary expenses in pursuant to the budget (the "Budget") attached to the Declaration of Hitesh Patel (the "Patel Declaration"), plus a 10% variance in the aggregate, which may carry over from month to month. The Budget projects monthly expense for each month beginning in June 2022 through September 2022.

    b. Set a final hearing at an appropriate (the "Final Hearing") and a briefing schedule for approval of the final use of cash collateral through the end of September 30, 2022.

    c. At the Final Hearing:

        i. Approve the use of cash collateral of the Secured Creditors on a final basis from the Petition Date through September 30, 2022, in the amounts set forth in the Budget plus a 10% aggerate variance from the gross amount sought to be expended in the Budget for actual and necessary costs and expenses that must be expended to preserve the assets of the estate;

        ii. Authorize the creation of monthly reserves for large annual expenses and anticipated Chapter 11 costs, including professional fees and expenses as detailed in the Budget from the Petition Date through September 30, 2022;

        iii. Grant the Secured Creditors replacement liens in Debtor's cash collateral to the same extent, validity, scope, and priority as their prepetition liens held on the Petition Date (the "Proposed Replacement Liens");

        iv. Authorize Debtor to make adequate protection payments to CPIF commencing in June 2022 (paid by the 15th day of the month), in the amount of $30,000 per month;

        v. Authorize Debtor to make adequate protection payments to Access

Financial, commencing in June 2022 (paid by the 15th day of the month), in the amount of $15,000 and

    vi.   Grant such other and further relief as is just and appropriate under the circumstances of this case.

**INTRODUCTION AND HISTORY OF DEBTOR IN POSSESSION**

1. On June 1, 2022 (the "Petition Date") Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1. Debtor's principal executive office is located at 458 33rd Ave., San Francisco, CA 94121. Debtor owns and operates a 98-room hotel in Santa Rosa, California dba Holiday Inn Express Santa Rosa (the "Hotel").

2. The Hotel, in addition to the rooms, has a breakfast dining area, an outdoor pool, a fitness room, a lobby workstation, and a market pantry. The Hotel operates under a license agreement with Holiday Inn Express.

3. Debtor is one of eight LLCs (the "Patel Hotel Entities") owned by the family of Bhavesh and Hitesh Patel that own and operate various 14 hotels in California. Due to the significant interruption in business by the Covid Pandemic, three of the LLCs have been forced to file Chapter 11 to reorganize their debts (the "Patel Chapter 11 Entities").

4. The history of the Patel hotel business begins in 1980 when Bhavesh and Hitesh Patel's parents, Jashvant and Hansaben Patel, leased the Fairfax Hotel. Over the years, Jashvant and Hansaben Patel added multiple hotels to the family business and formed different entities to own them. Their sons Bhavesh Patel and Hitesh Patel joined in 2007 (Hitesh) and 2007 (Bhavesh).

5. On October 19, 2019, Jashvant Patel passed away, and Bhavesh and Hitesh took over many more responsibilities in the family's hotel operations.

6. Hitesh Patel is the Debtor's Manager.

7. An application to designate Hitesh Patel as the Designated Responsible Person pursuant to L.B.R. 4002-1 for all the Patel Chapter 11 Entities will be filed in the near future.

8. In addition to his managerial duties, Hitesh manages payroll and organizes the monthly and analytical reports of operations for the Patel Chapter 11 Entities. Bhavesh performs

marketing research and supervises business activities and property management for the Patel Chapter 11 Entities.

9. The primary business cause of the Chapter 11 filing was the drastic reduction in room revenue over the past several years from the Covid pandemic. The Hotel's revenue for 2020 was $422,000 but improved in 2021 to $2,069,000. The Debtor anticipates that 2022 will be significantly better as we continue to exit the Covid Pandemic.

10. The immediate cause for this Chapter 11 filing was litigation initiated by CPIF and Access Financial. The lawsuits were the initial steps to the appointment of a receiver and a writ of possession for the Hotel's personal property. In addition, CPIF recorded a Notice of Trustee's Sale with a nonjudicial foreclosure sale set for June 24, 2022

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

**Background Cash Collateral Facts**:

11. With regard to the estimated value of the Hotel noted above, an appraisal was conducted in December 2019 by Newmark Knight Frank (the "Appraisal"). The Appraisal was conducted prior to the renovation and the transition to a Holiday Inn Express. The Appraisal projected the value of the Hotel at $30,000,000 upon completion of the renovations, and $31,500,000 as of December 2021, upon stabilization of the new operations. Debtor estimates the current value of the Hotel at $32,000,000 based upon a general improvement in the industry and increased occupancy and room rates heading toward the summer of 2022.

12. Debtor has two claims secured against the Property. The first are unpaid real property taxes owing to Sonoma County, estimated at $510,064. The second claim is a debt to CPIF from February 2020 loan and was used to refinance an existing obligation and renovate of the Hotel. The current debt to CPIF is estimated at $24,000,000.

13. In addition to the above claims, Debtor has a debt to Access Financial in the approximate amount of $4,500,000. Debtor borrowed these funds in May 2020 to complete the Hotel renovation and conversion to a Holiday Inn Express. Access Financial has a lien on Debtor's personal property, which was perfected with a filing of a UCC-1. Debtor's Schedule D values the property covered by the Access Financial UCC-1 at $1,000,000. This estimate is based upon the

value listed by Access Financial in a recently filed lawsuit under which it sought a writ of possession as to those assets.

14. In addition, Debtor's Schedule D lists a debt to the U.S. Small Business Administration (the "SBA") of $500,000, which is secured against Debtor's personal property assets via a UCC-1 filing. The SBA's interest is junior to that of Access Financial. The SBA loan was made in December 2021. Schedule D also lists a debt to Ascentium Capital of $100,000 stemming from an equipment loan of $100,000 in February 2021.

15. Debtor derives its income from hotel room revenues, which include multiple services in addition to temporary occupancy of a room such as housekeeping services, condiments, and breakfast food and drinks. The hotel revenues are likely cash collateral of some or all of the Secured Creditors.

16. The Motion seeks the use of Debtor's cash collateral as provided in the Budget.

17. Debtor needs to use cash collateral immediately to be able to pay critical and necessary expenses of its operations including payroll and related benefits, operation expenses, utilities, insurance, and the projected professional costs of this Case. Payment of these expenses is critical for Debtor to continue its operations and reorganize its business in accordance with the requirements of the United States Bankruptcy Code.

18. The Budget projects monthly expenses through the end of September 2022, and includes proposed monthly adequate protection payments to CPIF ($30,000) and Access Financial ($15,000).

19. Debtor further requests that it be authorized to spend in the overall aggregate up to a ten percent (10%) variance from the gross amount sought to be expended in the Budget through September 30, 2022, for the actual and necessary costs and expenses that must be expended to preserve the assets of the estate. Omnibus Patel Decl.¶ 38.

**ADEQUATE PROTECTION**

20. In addition to the proposed payments noted above, the Secured Creditors will be adequately protected by (a) the Proposed Replacement Liens; (b) the preservation of the value of Debtor's business as a going concern.

21. The Secured Creditors which are secured as to the Hotel, are also adequately protected by the equity in the property.

22. Based on the estimated secured debt there exists approximately $3,500,000 in equity.

23. The Debtor in Possession respectfully submits that more than sufficient equity in the Subject Property exists to grant both emergency and final use of cash collateral.

## LEGAL ANALYSIS

Bankruptcy Code section 363(c)(2) provides that a debtor-in-possession may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2). Federal Rule of Bankruptcy Procedure 4001(b)(2) permits the Court to authorize the interim use of cash collateral "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

The Secured Creditors presumably assert security interests in Debtor's real and personal property. Debtor seeks authority to use the cash collateral as outlined above to pay necessary expenses to avoid immediate and irreparable harm and to maintain the going concern value of the Hotel.

These are immediate and necessary expenses that place Debtor's request within the requirements of Federal Rule of Bankruptcy Procedure 4001(b)(2).

Pursuant to Bankruptcy Code section 361, adequate protection can be in the form of replacement liens and adequate protection payments. As demonstrated in the Adequate Protection section above, the Debtor respectfully submits that the Secured Creditors will be adequately protected with both a replacement lien on post-petition cash collateral to the same extent, validity, scope, and priority as existed on the Petition Date as well as periodic payments during the use of cash collateral period. The Motion is supported by this Memorandum of Points and Authorities, Declaration of Hitesh Patel.

WHEREFORE, Debtor respectfully requests that the Court grant the relief requested

herein and grant such other relief as is just and appropriate given the circumstances of this case and Motion.

Dated: June 1, 2022

FINESTONE HAYES LLP

By: */s/ Stephen D. Finestone*
Stephen D. Finestone
Proposed Attorneys for Rudra Investments, LLC