Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Proposed Counsel for Debtor
Rudra Investments, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>RUDRA INVESTMENTS, LLC<br><br>Debtor. | Case No. 22-30275<br><br>Chapter 11<br><br>**DECLARATION OF HITESH PATEL IN SUPPORT OF FIRST DAY MOTIONS**<br><br>Hearing Scheduled:<br>Date: TBD<br>Time: TBD<br><br>**Remote appearances only.**<br><br>*Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic* |

I, Hitesh Patel, declare as follows:

1. I am the Manager of Rudra Investments, LLC, a Delaware Limited Liability Company, the debtor and debtor in possession ("Debtor" or "Rudra") in the above-referenced chapter 11 case (the "Case"). I make this declaration in support of the Debtor's various motions filed at the inception of the Case (the "First Day Motions"). I am familiar with the operation of the Debtor's operations, its business affairs, and its books and records. If called as a witness, I could and would testify competently to the facts stated herein.

FIRST DAY DECLARATION                                                                                                    1

2. On June 1, 2022 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

**Background and History of Hotel and Family Business**:

3. Rudra's principal executive office is located at 458 33rd Ave., San Francisco, California. Rudra owns and operates a 98-room hotel as a Holiday Inn Express in Santa Rosa, California (the "Hotel" or the "Property").

4. Rudra acquired the Hotel in 2018 and remodeled it in 2020 so that it could operate as a Holiday Inn Express franchise.

5. The Hotel, in addition to renting the rooms on a per night basis, has a breakfast dining area, an outdoor pool, a fitness room, a lobby workstation, and a market pantry.

6. Rudra is one of eight Limited Liability Companies (the "Patel Hotel Entities") owned by the family of Jashvant and Hansaben Patel that own and operate 14 hotels in California (the "Patel Hotels"). Due to the significant interruption in business by the Covid Pandemic, three of the LLCs, including Prithvi Investments, LLC ("Prithvi"), Hansaben Investments, LLC ("Hansaben") and the Debtor, have been forced to file Chapter 11 to reorganize their debts (the "Patel Chapter 11 Entities").

7. The history of the Patel hotel business begins in 1980 when my parents, Jashvant and Hansaben Patel, leased the Fairfax Hotel. Over the years, Jashvant and Hansaben added multiple hotels to the family business and formed different entities to own them.

**Background of Management of Hotel**:

8. My brother, Bhavesh Patel, joined the family business in 2007, and I joined in 2012. My brother has a bachelor's degree in Marketing from the University of San Francisco, and I have a bachelor's degree in Finance from CSU East Bay. Before joining the family's hotel operations, I worked for Salesforce.

9. On October 19, 2019, my father, Jashvant Patel, passed away, and Bhavesh Patel and I took over many more responsibilities in the family's hotel operations.

10. I am the Manager of Hansaben and Rudra and, in anticipation of the Chapter 11 filings I have been named President of Prithvi. Bhavesh Patel is the Manager of the Prithvi, as I have no ownership interest in Prithvi.

11. In addition to my managerial duties, I directly manage the payroll and organize the monthly and analytical reports of operations for all the Patel Hotel Entities, including the Patel Chapter 11 Entities.

12. Bhavesh Patel performs marketing research and supervises business activities and property management for all the Patel Hotel Entities.

13. I have agreed to become the Designated Responsible Person pursuant to L.B.R. 4002-1 for all the Patel Chapter 11 Entities.

**Cash Flow Management Among Patel Hotel Entities**:

14. The schedules and statement of financial affairs on file herein detail certain transfers made to the Patel Hotel Entities over the past year. These transfers out of Hansaben, and transfers back into the Hansaben, have been routine over the entire period that I have managed the finances for the Patel Hotel Entities and are the functional equivalent of a working capital line of credit that helps the Patel Hotels manage variable cash flow. For example, Schedule E/F lists a debt owed to Hansaben as of the petition date.

15. This analysis is preliminary and needs to be confirmed, as does a list of payments made by the Debtor to the Patel Hotel Entities.

16. Rudra will have a CPA (Bachecki Crom) perform such an accounting if its anticipated application to employ a Bachecki Crom is approved.

17. To assist the Hotel's cash flow during the Case, my brother and I intend to continue to accrue management fees and not seek to have them paid as part of the payroll motion or the cash collateral motion.

18. The above-described cash flow management process used by the Patel Hotel Entities is a crucial component of the operations of the Hotel. If there is a disruption in cash flow, the other family entities have historically been the backstop.

19. If Debtor encounters post-petition cash flow liquidity issues, it is possible that it will need transfers from other Patel Hotel Entities that have not filed for Chapter 11. I understand that any transfers during the Case to or from any of the Patel Hotel Entities require Bankruptcy Court approval.

**Secured Claims and the Hotel's Value:**

20. Debtor has two claims secured against the Property. The first are unpaid real property taxes owing to Sonoma County. I estimate the amount owing is $510,064. The second claim is a debt to CPIF California LLC ("CPIF"). This was a loan from February 2020 and was used for the purchase and renovation of the Hotel. I estimate the current debt to CPIF at $24,000,000.

21. My best current estimate is that the Hotel has a value of $32,000,000.

22. In addition to the above claims, Rudra has a debt to Access Point Financial ("Access Financial") in the approximate amount of $4,500,000. Rudra borrowed these funds in May 2020 to complete the Hotel renovation and conversion to a Holiday Inn Express. Access Financial has a lien on Debtor's personal property, which I believe was perfected with a filing of a UCC-1. Debtor's Schedule D values the property covered by the Access Financial UCC-1 at $1,000,000. This estimate is based upon the value listed by Access Financial in a recently filed lawsuit under which it sought a writ of possession as to those assets.

23. In addition, Debtor's Schedule D lists a debt to the U.S. Small Business Administration (the "SBA") of $500,000, which is secured against Debtor's personal property assets via a UCC-1 filing. The SBA's interest is junior to that of Access Financial. The SBA loan was made in December 2021. Schedule D also lists a debt to Ascentium Capital of $100,000 stemming from an equipment loan of $100,000 in February 2021.

**Overview of Unsecured Claims:**

24. Excluding the unsecured insider debt for management fees and money potentially owed to other Patel Hotel Entities, there is approximately $859,000 in unsecured claims, which includes past due franchise fees of $286,000, occupancy taxes of $371,000 owed to the City of Santa Rosa, and various trade debts.

**Reason for Filing Chapter 11 Case**:

25. The primary business cause of the Chapter 11 filing was the drastic reduction in room revenue over the past several years from the Covid pandemic. The Hotel's revenue for 2020 was $422,000 but improved in 2021 to $2,069,000. I anticipate that 2022 will be significantly better as Debtor and the related economy continue to exit the Covid Pandemic.

26. The immediate cause for this Chapter 11 filing was litigation initiated by CPIF and Access Financial. The lawsuits were the initial steps to the appointment of a receiver and a writ of possession for the Hotel's personal property. In addition, CPIF recorded a Notice of Trustee's Sale with a nonjudicial foreclosure sale set for June 24, 2022.

**Estimated Value of Hotel**:

27. With regard to the estimated value of the Hotel noted above, an appraisal was conducted in December 2019 by Newmark Knight Frank (the "Appraisal"). The Appraisal was conducted prior to the renovation and the transition to a Holiday Inn Express. The Appraisal projected the value of the Hotel at $30,000,000 upon completion of the renovations, and $31,500,000 as of December 2021, upon stabilization of the new operations. I place the current value of the Hotel at $32,000,000 based upon a general improvement in the industry and increased occupancy and room rates heading toward the summer of 2022.

**Goal for Chapter 11:**

28. Debtor's goal for this Chapter 11 filing and the two concurrent filings by Prithvi and Rudra is to reorganize the obligations of the Patel Chapter 11 Hotels that were dramatically damaged by the Covid pandemic and to pay all creditors in full over time. Debtor will revisit its financial performance at the end of the summer season, which should be the strongest portion of the year.

**II. ADDITIONAL FACTS RELATED TO DEBTOR'S FIRST-DAY MOTIONS**

**Cash Collateral Motion**:

29. Debtor derives its income from hotel room revenues, which include multiple services in addition to temporary occupancy of a room, such as housekeeping services, condiments, and breakfast food and drinks (collectively, the "Hotel Services").

FIRST DAY DECLARATION                                                                                                  5

30. I understand that the revenue from the Hotel Services are the cash collateral of CPIF and possibly Access Financial and the SBA. In addition, hotel operations involve the use of Debtor's personal property, which is the collateral for the obligation to Access Financial.

31. Debtor needs to use cash collateral immediately to pay critical and necessary expenses of its operations, including payroll and related benefits and other operating expenses.

32. Payment of these expenses is needed immediately for Debtor to continue its operations and reorganize its business in accordance with the requirements of the United States Bankruptcy Code.

33. The cash collateral motion will offer all secured creditors replacement liens in Debtor's cash collateral to the same extent, validity, scope, and priority as the prepetition liens held by the secured creditors on the Petition Date.

34. In my years of experience in the operation of this Hotel and other hotels, the inability to have access to funds for several weeks, and especially not to pay employees, would have a devasting and negative impact on the business, which would irreparably the harm the creditors and the reorganization prospects for the Debtor in Possession.

35. The cash collateral motion seeks authority to use cash collateral as provided in the budget attached as Exhibit A to this declaration (the "Budget").

36. The Budget is monthly through September 30, 2022. The Budget includes anticipated amounts which I anticipate will be ordinary course expenditures in the operation of the Hotel. In addition to the ordinary course expenditures, the Budget provides for adequate protection payments to CPIF of $30,000 per month and to Access Financial of $15,000 per month. The Budget includes a monthly entry for U.S. Trustees' fees, which represents Debtor's best estimate of what will be due on a quarterly basis. Finally, the Budget includes monthly amounts to be set aside for Debtor's professionals – counsel, Bachecki Crom and experts in connection with the potential plan confirmation process.

37. After the interim period, as determined by the Court, the Motion seeks final approval of the budget on a final basis through September 30, 2022, or such further date as set by the Court.

38. Debtor requests that it be allowed a 10% variance of the budget items for each item and in the aggregate, with any unused variance carried over to the following month.

### **Employee Priority Claims:**

39. The Hotel currently employs twelve employees. The estimated prepetition portion owed for the next payroll due on June 1, 2022, will be approximately $12,800 for wages and taxes/deductions in total and that amount will all be for the prepetition period. I estimate that the largest prepetition wage payment is less than $1,600. Attached as Exhibit B is a list detailing the first initial, last name, and prepetition amount due to each employee.

40. As described above, neither my brother nor I will be asking for management fees either through payroll or directly as part of the prepetition payroll motion.

41. As a result of the bankruptcy filing, I understand that Debtor will be prohibited from paying or otherwise satisfying its pre-petition obligations to its employees as of the Petition Date, including its obligations under various wage, salary, retirement, healthcare, and other benefit programs including accrued vacation pay, employee deductions and employee expense reimbursements (the "Employee Obligations").

42. I also understand that deductions such as garnishments, support payments and employee pension plan, and flexible spending contributions, as well as money withheld by Debtor from employees' paychecks on account of various federal, state, and local income, FICA, Medicare, and other taxes (collectively, "Employee Deductions") are funds in our possession that do not belong to the Debtor in Possession but belong to the employees.

43. Finally, I also understand that Debtor will be prohibited from reimbursing its employees for certain business-related expenses (collectively, "Employee Expenses"). Collectively, the Employee Obligations, Employee Expenses, and Employee Deductions are hereafter referred to as the "Prepetition Employee Obligations."

44. To maintain Employee morale at this critical time, to minimize the personal hardship the employees would suffer if Prepetition Employee Obligations are not timely satisfied and to avoid any disruption of Debtor's operations, Debtor seeks the authority for it to honor, in its

FIRST DAY DECLARATION                                                                                            7

discretion, the Prepetition Employee Obligations. All of the Prepetition Employee Obligations owed are well below the priority claim limitation provided by the Bankruptcy Code.

45. I believe that many employees will not return to work if their wages, benefits, and reimbursable expenses are not covered, which will cause an enormous burden on the Hotel operations.

**Bank Account Motion**:

46. Debtor's prepetition bank is Wells Fargo, where it maintains one checking account (the "Account") out of which Debtor pays its operating expenses. The Hotel's cash management system is connected with this Account, which is used to accept and process credit card receipts and all electronic payments. As almost all of Debtor's revenue is received via customers' use of credit cards, it would be highly disruptive to Debtor in Possession's business to close the Account.

47. In addition, Debtor uses its Account to reconcile payments received and allows it to maintain control of and visibility into disbursements of the company, thereby efficiently monitoring the Hotel's transactions.

48. The Account is also used to fund payments to Debtor's payroll service and will be used to fund Debtor's first post-petition payroll.

49. It is not feasible for Debtor to open and fund a new account in time to fund its initial post-petition payroll. Given the administrative delays often encountered by Debtors seeking to open new DIP accounts, Debtor's subsequent payrolls could be interrupted or delayed as well.

50. Finally, it is impossible to predict how quickly Debtor could switch over its merchant card account and other accounts to change the ACH and similar transfers to a new account. Closing the Account immediately would almost assuredly be a financial disaster and also cause irreparable harm to the creditors and the prospects for reorganization.

51. Based on these reasons, Debtor request that the Court authorize Debtor's continued use the account. I can work with Wells Fargo to make certain it does not honor any pre-petition checks after the Case is filed.

///

///

**Utility Adequate Assurance Payment Motion**:

52. The proposed "adequate assurance payment" to PG&E is $9,000. This amount is the estimated PG&E bill for electricity and gas each month on average for the period from the Petition Date through September 30, 2022.

53. I believe this is adequate assurance payment given based on the Budget showing sufficient funds to pay this bill each month during Chapter 11 and that the payment is equivalent to the typical monthly obligation.

54. As for utility services being critical, the Hotel cannot operate without electrical service. Termination would cause immediate and irreparable harm to the Hotel operations and critical reorganization efforts.

I declare under penalty of perjury that the foregoing facts are true and correct, and that this declaration was executed on June 1, 2022 in San Francisco, California.

                                            /s/ Hitesh Patel
                                            Hitesh Patel

# EXHIBIT A

# Rudra Investments LLC

|  | Forecast Month Ending: 6/30/2022 | Forecast Month Ending: 7/31/2022 | Forecast Month Ending: 8/31/2022 | Forecast Month Ending: 9/30/2022 |
|---|---:|---:|---:|---:|
| **Assumptions:** | | | | |
| Total Rooms in Hotel available/night | 98 | 98 | 98 | 98 |
| Days available | 30 | 31 | 31 | 30 |
| Rooms Available in Hotel | 2940 | 3038 | 3038 | 2940 |
| Expected Occupancy % | 75% | 80% | 80% | 75% |
| # of Rooms rented | 2205 | 2430 | 2430 | 2205 |
| Average Price per Room/night | 140 | 140 | 140 | 140 |
| **Cash Receipts** | | | | |
| Rooms | $ 308,700 | $ 340,200 | $ 340,200 | $ 308,700 |
| Other Income | | | | |
| Total Cash Receipts | $ 308,700 | $ 340,200 | $ 340,200 | $ 308,700 |
| **Total Cash Receipts** | **$ 308,700** | **$ 340,200** | **$ 340,200** | **$ 308,700** |
| **Cash Disbursements** | | | | |
| Operational Disbursements: | | | | |
| Payroll & related | | | | |
| Wages & Taxes | 45,000 | 45,000 | 45,000 | 45,000 |
| Workers Compensation | 200 | 200 | 200 | 200 |
| Payroll Processing Expense | 500 | 500 | 500 | 500 |
| Owner Draws | | | | |
| Total Payroll & Related | 45,700 | 45,700 | 45,700 | 45,700 |
| Operation Disbursements | | | | |
| Contenintal Brkfst/Evening Reception | 9,000 | 9,000 | 9,000 | 9,000 |
| Guest/Operating Supplies /Laundry Supplies | 4,300 | 4,300 | 4,300 | 4,300 |
| Uniforms/Linen replacements | 1,000 | 1,000 | 1,000 | 1,000 |
| Newspapers | 500 | 500 | 500 | 500 |
| Total Operations Expenses | 14,800 | 14,800 | 14,800 | 14,800 |

# Hansaben Investments LLC

|  | Forecast Month Ending: 6/30/2022 | Forecast Month Ending: 7/31/2022 | Forecast Month Ending: 8/31/2022 | Forecast Month Ending: 9/30/2022 |
|---|---:|---:|---:|---:|
| **Occupancy, R&M & Utilities** | | | | |
| Fire Alarm System | 500 | 500 | 500 | 500 |
| Computer Equipment | 700 | 700 | 700 | 700 |
| Decorations/Plants & Grounds | 700 | 700 | 700 | 700 |
| Pool | 1,100 | 1,100 | 1,100 | 1,100 |
| Pest Services | 500 | 500 | 500 | 500 |
| Trash & Recycling Services | 2,000 | 2,000 | 2,000 | 2,000 |
| Water | 3,000 | 3,000 | 3,000 | 3,000 |
| Property Taxes | 14,000 | 14,000 | 14,000 | 14,000 |
| Elevator Service | 1,400 | 1,400 | 1,400 | 1,400 |
| Phones | 1,800 | 1,800 | 1,800 | 1,800 |
| Cable/Satellite | 2,000 | 2,000 | 2,000 | 2,000 |
| Energy/Utilities | 9,000 | 9,000 | 9,000 | 9,000 |
| Total Occupancy, R&M & Utilities | 36,700 | 36,700 | 36,700 | 36,700 |
| **Marketing & Franchise Disbursements** | | | | |
| Marketing | 6,500 | 6,500 | 6,500 | 6,500 |
| Travel Agent Commissions | 6,500 | 6,500 | 6,500 | 6,500 |
| Printing & Collateral | | | | |
| Franchise Fees | 30,870 | 31,899 | 31,899 | 30,870 |
| Total Marketing & Franchise expenses | 43,870 | 44,899 | 44,899 | 43,870 |
| **Administrative expenses** | | | | |
| Insurance - Umbrella | 3,500 | 3,500 | 3,500 | 3,500 |
| Merchant Fee | 4,000 | 4,500 | 4,500 | 4,000 |
| Chargebacks | 1,000 | 1,000 | 1,000 | 1,000 |
| Computer Services | 500 | 500 | 500 | 500 |
|  | 9,000 | 9,500 | 9,500 | 9,000 |
| **Subtotal Operations Disbursements** | $ 150,070 | $ 151,599 | $ 151,599 | $ 150,070 |

# Hansaben Investments LLC

|  | Forecast Month Ending: 6/30/2022 | Forecast Month Ending: 7/31/2022 | Forecast Month Ending: 8/31/2022 | Forecast Month Ending: 9/30/2022 |
|---|---:|---:|---:|---:|
| **Financing & Professional Fees:** | | | | |
| Financing Expenses | | | | |
| Columbia Pacific Loan | 30,000 | 30,000 | 30,000 | 30,000 |
| Access Point Financial Loan | 15,000 | 15,000 | 15,000 | 15,000 |
| U.S. Trustee's Fees (estimated) | 1,000 | 6,750 | 6,750 | 6,750 |
|  | 46,000 | 51,750 | 51,750 | 51,750 |
| Professional (Restructuring) | | | | |
| Debtor Attorneys | 15,000 | 15,000 | 15,000 |  |
| Debtor CPA | 5,000 | 5,000 | 5,000 |  |
| Plan Experts |  | 15,000 |  |  |
|  | 20,000 | 35,000 | 20,000 | - |
| **Subtotal Financing & Professional Fees** | $ 66,000 | $ 86,750 | $ 71,750 | $ 51,750 |
| **Total Cash Disbursements** | $ 216,070 | $ 238,349 | $ 223,349 | $ 201,820 |
| **Net Cash Flow** | $ 92,630 | $ 101,851 | $ 116,851 | $ 106,880 |
| **Cummulative Cash Flow** | $ 92,630 | $ 194,481 | $ 311,332 | $ 418,212 |

# EXHIBIT A

# EXHIBIT B

| Employee | Estimated Pre-petition Payroll |
|---|---|
| B. Godoy | $512 |
| C. Franks | $1,376 |
| C. Garcia | $720 |
| I. Hernandez-Mendoza | $1,056 |
| J. Zager | $408 |
| J. Cervantes | $1,584 |
| L. Hernandez-Morales | $1,056 |
| M. Aguilar | $1,024 |
| M. Lopez | $1,088 |
| P. Rizo | $1,376 |
| R. Espinoza | $1,024 |
| T. Ambrocio | $1,056 |