United States Bankruptcy Court
Northern District of California

In re:

    Case No. 22-30275

    Chapter 11

RUDRA INVESTMENTS, LLC
_____/

**[PROPOSED] COMBINED PLAN OF REORGANIZATION**

**AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT**
**October 14, 2022**

**INTRODUCTION**

    This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

    Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: up to 50% of their allowed claims)paid from the sale of Debtor's hotel property. Taxes and other priority claims would be paid in full, as shown in Part 3.

    Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time].

    Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's

monthly income and expenses. Exhibit 4 describes the sources of income for the payments required under the Plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Debtor to Adjust Terms and Pay Pursuant to Agreement with Secured Creditor.**

Pursuant to an agreement between Debtor and its primary secured Creditors, CPIF California, LLC and HDDA, Inc., Debtor will market its hotel property (the "Hotel") for sale. While the Hotel is being marketed, Debtor shall make monthly payments as discussed below. Debtor will pay the secured creditors agreed amounts from the sale of the Hotel. The amounts are set forth below. If Debtor is unable to pay the agreed amounts prior to an agreed-upon period, the secured creditors shall have the right to proceed to foreclosure without obstruction from the Debtor. The monthly payments shall be made by the 29th day of each month.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past

the date Debtor obtains a discharge. The claimant's rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Mo. Pymt. | Term |
|---|---|---|---|---|---|---|
| 1A | Sonoma County | Hotel – 2632 Cleveland Ave., Santa Rosa, CA | $679,528 | Per Section 511 – rate is set by non-bankruptcy law | NA | See below |
| 1B | CPIF California, LLC | Hotel – 2632 Cleveland Ave, Santa Rosa, CA 95403 | $25,783.89 per claim. Additional interest and charges are accruing | 10% | $92,000 | Until close of sale. See terms below |
| 1C | HDDA, LLC | FF&E located at the Hotel | $4,806,904 per claim. Additional interest and charges are accruing | 18% | $5,000 | Until close of sale. See terms below. |
| 1D | Ascentium Capital | Specified equipment installed at the Hotel | $162,050 | | $2,795 and $2,826 there are 2 finance agreements. | Debtor to keep current and pay off claim upon close of sale. |

1A – Sonoma County property tax claim plus accrued interest will be paid upon close of the sale of the Hotel. Debtor will remain current on post-petition property taxes beginning with the installment due December 10, 2022.

Combined Plan & Disclosure Statement

-3-

1B – If the sale of the Hotel closes by Feb. 28, 2023, CPIF will accept $22,750,000 in full satisfaction of its claim. If the sale of the Hotel closes by March 31, 2023, CPIF will accept $23,000,000 in full satisfaction of its claim. If the sale of the Hotel closes by April 30, 2023, CPIF will accept $23,250,000 in full satisfaction of its claim. If the sale of the Hotel closes by May 31, 2013, CPIF will accept $23,750,000 in full satisfaction of its claim. If Debtor cannot close a sale of the Hotel of prior to May 31, 2023, sufficient to make the agreed-upon payments, CPIF shall be entitled to complete its no-judicial foreclosure under California law without further court order or interference from Debtor. Debtor agrees not to object or otherwise contest the foreclosure sale (or the amounts contained therein) and shall cooperate with CPIF to the extent necessary, including but not limited to stipulating to relief from stay to enable the foreclosure sale to proceed, and if requested at CPIF's sole and complete discretion, the appointment of a state court receiver to take possession of the Hotel pending the nonjudicial foreclosure. Rudra agrees that CPIF's proof of claim – Claim No. 7 shall be deemed an allowed secured claim in the amount filed.

1C – If the sale of the Hotel closes by May 31, 2023, HDDA will accept $500,000 in full satisfaction of its claim.

**Class 2. General Unsecured Claims.**

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

> **Percent Plan.** Creditors will receive up to 50% of their allowed claim from the sale of the Hotel to the extent the sale proceeds are sufficient to pay off the secured and priority debts that are senior to the general unsecured creditor pool.

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| SBA | $508,321.92 | N | TBD | From sale |
| PG&E | $70,429.80 | N | TBD | From sale |

Combined Plan & Disclosure Statement

-4-

| Kapadia Insurance | $92,600.22 | N | TBD | From sale |
| FTB | $1,426.75 | N | TBD | From sale |
| City of Santa Rosa | $4,460 | N | TBD | From sale |
| Booking.com | $3,049 | N | TBD | From sale |
| Ecolab | $1,633 | N | TBD | From sale |
| HD Supply | $1,505 | N | TBD | From sale |
| Hewlett Packard | $1,098 | N | TBD | From sale |
| Recology | $1,686 | N | TBD | From sale |
| Schindler | $1,871 | N | TBD | From sale |
| Sysco | $2,061 | N | TBD | From sale |
| | | | | |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**Class 3 – Interests in the Debtor**

The holders of interests in the Debtor will retain their interests and their rights will not be impaired by the Plan

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a) <u>Professional Fees</u>.
Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Finestone Hayes LLP – counsel for Debtor | $50,000 not including retainer |

Combined Plan & Disclosure Statement

| | |
|---|---|
| Bachecki Crom, & Co., LLP - accountant | $30,000 not including retainer |

The following professionals have agreed to accept payment over time as follows. Payments will be made [monthly/quarterly], due on the [number] day of the [month/quarter], starting [month & year] or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| N/A | | | |
| | | | |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  Other Administrative Claims.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date or whenever such claim is allowed, whichever is later; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| Debtor is not aware of any admin creditors at this time | |
| | |

(c)  Tax Claims.  Debtor will pay allowed claims entitled to

priority under section 507(a)(8) in full, with interest (at the non-bankruptcy statutory interest rate) in accordance with section 511 of the Bankruptcy Code. Payments will be made upon the Effective Date if funds are available. Otherwise payment shall come from the sale proceeds after sale of the Hotel.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(b)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| IRS | $5,000 | 4% | $5,000 | 1 |
| Franchise Tax Bd. | $9,439.09 | 4% | $9,439.09 | 1 |
| City of Santa Rosa – Transfer Occupancy Tax | $371,660 | 4% | $371,660 | 1 |

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) Executory Contracts/Unexpired Leases Assumed. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears will be paid in full from the sale of the Hotel in the case of Holiday Hospitality Franchise, LLC and upon the Effective Date in the case of Hewlett Packard.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Install. |
|---|---|---|---|---|

Combined Plan & Disclosure Statement

-7-

Case: 22-30275    Doc# 65    Filed: 10/27/22    Entered: 10/27/22 16:46:34    Page 7 of 18

| | | | | |
|---|---|---|---|---|
| Holiday Hosp. Franch., LLC | License for Holiday Inn Express | $334,807.70 - see below for further treatment | N/A | N/A |
| Hewlett Packard | Computer lease | $1,098 | | 1 |

**Further Information regarding Holiday Hospitality Franchising, LLC:**

The Debtor shall pay $334,807.70 to Holiday Hospitality Licensing, LLC ("HHF") plus an additional $20,000 for reasonable attorneys' fees, for a total Cure Amount of $354,807.70 (the "Cure Amount") to be paid through escrow at the closing on the closing date of the sale of the Hotel. Payment of the Cure Amount shall be by wire transfer to the Alston & Bird LLP CA IOLTA Trust Account.

License Agreement is not transferable: buyer needs to apply for a new license. HHF, as licensor, and Debtor, as licensee, are parties to that certain Holiday Inn Express® Hotel Conversion License Agreement dated June 29, 2019 (as may have been amended, the "License Agreement"). The License Agreement is not being transferred through the Sale. In order to operate as a Holiday Inn Express® Hotel after closing, any buyer will need to apply for a new license agreement with HHF, which may or may not be approved in HHF's sole and absolute discretion. Prospective buyers may obtain a new license application by contacting Kevin Winkowski, Director, Transactions & Asset Management at IHG, 3 Ravinia Drive, Suite 100, Atlanta, GA 30346; telephone 678-477-3508. Prospective buyers are encouraged to contact Mr. Winkowski for the application and to submit a complete application package as early as possible. Neither the Debtor nor HHF guarantees a response to an application within any certain time period. If the buyer is not approved to enter into a new license agreement with HHF, then the Debtor is responsible for carrying out all de-identification requirements required by the License Agreement. In addition, Debtor shall notify HHF at least 2 weeks before the first anticipated Closing Date, and upon such notification, HHF shall be authorized to immediately remove the Hotel from its reservation system as of the anticipated Closing Date.

The License Agreement and all rights thereto, including Debtor's rights to use HHF's marks and system, is a nonassignable asset that is not being sold or acquired through the sale or through any foreclosure proceeding. The License Agreement will be rejected and terminated as of 12:01 a.m. on the later of the Closing Date of the sale of the Hotel or the Effective Date.

Guaranty Explicitly Excluded from any Discharge or Injunction: For avoidance of doubt, and notwithstanding anything in this Plan or Confirmation Order, nothing in the Plan or Confirmation Order shall alter, change or otherwise modify HHF's rights with respect to that certain Guaranty dated June 29, 2019 of the License Agreement, and the obligations of the guarantors thereto.

Franchise fees to be paid in the ordinary course: Notwithstanding the above or anything in the Plan, Disclosure Statement, or Confirmation Order, HHF will be paid on its postpetition franchise fees in the ordinary course, and is not required to file an Administrative Claim. Debtor shall reserve sufficient funds so that a final invoice can be generated by HHF in the ordinary course and paid by the Debtor after the termination of the License Agreement.

(b) Executory Contracts/Unexpired Leases Rejected. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| N/A | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed [select one] [assumed/rejected].

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) Discharge. Debtor shall receive a discharge of debts upon confirmation of this Plan.

(b) Vesting of Property. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(e) below. The property that will vest in the Reorganized Debtor shall include any claims to tax refunds (including Employee Retention Credits), any claims against

related entities and avoidance actions under Chapter 5 of Title 11.

(c) <u>Plan Creates New Obligations</u>. Except as provided in Part 6(d), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>. Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to

obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class. These provisions do not apply to CPIF's remedies in the event Debtor does not pay CPIF's claim by May 31, 2023, which are set forth above.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations. These provisions do not apply to CPIF's remedies in the event Debtor does not pay CPIF's claim by May 31, 2023, which are set forth above.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be [select one] [returned to Debtor] [distributed pro-rata among allowed claims in this class].

(c) <u>Cramdown</u>.  Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| N/A | | | | |
| | | | | |

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

Rudra Investments LLC
458 33rd Ave.
San Francisco, CA 94121
With Copy to:

Stephen D. Finestone
Finestone Hayes LLP
456 Montgomery St., 20th Fl.
San Francisco, CA 94101
sfinestone@fhlawllp.com


Dated: October 14, 2022

                                                 /s/ Hitesh Patel
                                                Hitesh Patel
                                                On behalf of the Debtor


                                                /s/ Stephen D. Finestone
                                                Stephen D. Finestone
                                                Attorney for Debtor

## Attorney Certification

I, Stephen D. Finestone, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on December 7, 2011 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

-Removed provisions relating to individual debtors
-Removed provisions that did not apply, such as options for treatment of claims that were not selected.

I declare that the foregoing is true and correct. Executed this 14th day of October, 2022.

                                 /s/ Stephen D. Finestone

                                 Attorney for Debtor(s)

Combined Plan & Disclosure Statement

-14-

Case: 22-30275    Doc# 65    Filed: 10/27/22    Entered: 10/27/22 16:46:34    Page 14 of 18

**Exhibit 1 - Events That Led To Bankruptcy**

The primary business cause of the Chapter 11 filing was the drastic reduction in room revenue over the past several years from the Covid pandemic. The Hotel's revenue for 2020 was $422,000 but improved in 2021 to $2,069,000. Performance during 2022 has steadily improved.

The immediate cause for this Chapter 11 filing was litigation initiated by creditors CPIF and HDDA. The lawsuits were the initial steps to the appointment of a receiver and a writ of possession for the Hotel's personal property. In addition, CPIF recorded a Notice of Trustee's Sale with a nonjudicial foreclosure sale set for June 24, 2022. Debtor needed to file this case to prevent losing the Hotel and to give it adequate time to seek a reorganization.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: 2632 Cleveland Ave., Santa Rosa, CA 94503

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| Unknown (see discussion below) | 1st $25,783,952 | N/A | Unknown | N/A | N/A |
| | 2nd | | | | |
| | 3rd | | | | |

The lien amount shown above does not include the outstanding property tax of $679,528. If the case were converted, the Hotel would likely cease operations and lose its ability to utilize the Holiday Inn Express designation. These events would significantly reduce the value of the real property to an amount well below the amount of the secured debt. Debtor does not believe a Chapter 7 trustee would be able to sell the Hotel and would abandon it. Moreover, per the terms of this Plan, CPIF would be entitled to complete its foreclosure.

Personal Property: (Based on most recent operating report

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Funds on account | $503,911 | unknown | N/A | $503,911 |
| Misc. inventory-supplies | Minimal | $0 | N/A | |
| FF&E | $500,000 | $4,086,904 | N/A | 0 |
| Employee Retention Credits (estimated at $100,000-$200,000) | Unknown | $0 | N/A | unknown |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL | | | | $503,911 |

| Net Proceeds of Real Property and Personal Property | $503,911 |
|---|---|
| Recovery from Preferences / Fraudulent Conveyances | unknown |

Combined Plan & Disclosure Statement

-16-

| Chapter 7 Administrative Claims | $0 |
|---|---|
| Chapter 11 Administrative Claims (estimated) | $75,000 |
| Priority Claims | $386,099 |
| Chapter 7 Trustee Fees (estimated) | $28,250 |
| Chapter 7 Trustee's Professionals (estimated) | $50,000 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $0 |

| Estimated Amount of Unsecured Claims | $690,139 |
|---|---|
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 50% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0% |

**Exhibit 3 - Income and Expenses**

See copy of the latest budget which was attached to the Stipulation for Continued Use of Cash Collateral, and which is attached below.

**Exhibit 4 - Feasibility Analysis**

Can the Debtor Make the Effective Day Payments?

|  | Amount |
|---|---|
| Total Cash on Hand (From Monthly Operating Report) | $503,911 |
| Effective Day Payments [SUBTRACT] |  |
|    Unclassified Claims |  |
|    Administrative Expense Claims | $75,000 |
|    Priority Claims (not including tax claims) | $0 |
|    U.S. Trustee Fees (estimated) | $35,000 |
| NET CASH AFTER EFFECTIVE DAY PAYMENTS |  |

Can the Debtor Make the Plan Payments? **Plan performance is based upon the sale of the Hotel. As such the chart below is not applicable. Based on Debtor's consultation with its broker, CBRE, it believes it is a reasonable to conclude that the sale of the Hotel will be sufficient to pay the claims pursuant to the terms of the Plan**

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Beginning Cash |  |  |  |  |  |

Combined Plan & Disclosure Statement

-17-

Case: 22-30275  Doc# 65  Filed: 10/27/22  Entered: 10/27/22 16:46:34  Page 17 of 18

| | | | | | |
|---|---|---|---|---|---|
| Net Income From All Sources (Exhibit 3) | | | | | |
| NET CASH | | | | | |
| § 507(a) Payments | | | | | |
| Class 1 Payments | | | | | |
| Class 2 Payments | | | | | |
| Class 3 Payments | | | | | |
| U.S. Trustee Fees | | | | | |
| TOTAL PLAN PAYMENTS | | | | | |
| NET CASH AFTER PLAN PAYMENTS | | | | | |

Combined Plan & Disclosure Statement